**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

**FILED**

**February 15, 2019**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

*In re* **A.E., L.E., Z.E., and D.P.**

**No. 18-0721** (Taylor County 18-JA-20, 18-JA-21, 18-JA-22, and 18-JA-23)

## MEMORANDUM DECISION

Petitioner Father D.E., by counsel Aaron P. Yoho, appeals the Circuit Court of Taylor County's July 17, 2018, order terminating his custodial rights to D.P. and his parental rights to A.E., L.E., and Z.E.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee Niezgoda, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Terri L. Tichenor, filed a response on behalf of the children in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in denying his motion for a post-adjudicatory improvement period, in finding that he maintained the same position regarding the abuse throughout the case, in finding that his childhood history of abuse affected his ability to parent his children, and in terminating his parental and custodial rights.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In February of 2018, the DHHR filed a petition alleging that petitioner utilized inappropriate physical discipline against seven-year-old D.P., including choking the child for taking a snack without permission and cutting the child on the back of the leg with a razor. Additionally, the DHHR alleged that petitioner engaged in domestic violence with the mother in the presence of the children and failed to maintain a safe and sanitary home. According to the DHHR, the home was littered with dog feces and presented an overwhelming smell. Petitioner waived his preliminary hearing.

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990).

The circuit court held an adjudicatory hearing in May of 2018. Petitioner offered to stipulate to the unsanitary condition of the home and loud arguments in the home, but specifically denied any incidents of physical violence or physical abuse of the children. The DHHR presented testimony from two Child Protective Service ("CPS") workers and a school counselor, and introduced forensic interviews of D.P. and Z.E. as evidence. The first CPS worker explained that D.P. told her that petitioner intentionally cut the back of his leg with a "shaver" and choked him on one occasion for taking a snack without permission. D.P. repeated these disclosures to his school counselor. However, the school counselor testified that D.P. returned to her the following day and stated that he was told at home not to talk to any adults in the school because he has Oppositional Defiant Disorder ("ODD"), Attention Deficit and Hyperactivity Disorder ("ADHD"), and that he lied. The school counselor further testified that D.P. explained that he knew the difference between the truth and a lie, but that he was told to say that he does not. According to the counselor, D.P. stated that if he spoke with adults at the school, he would be taken away and made to eat dog food. The second CPS worker testified that she visited petitioner's home and opined that it was in an unsuitable condition for children. Additionally, this worker spoke to four-year-old Z.E. who disclosed that petitioner was mean to him, mean to D.P., and choked D.P.

Petitioner testified and denied any physical domestic violence in the home. Further, petitioner denied cutting or choking D.P. Petitioner explained that he was home alone with the children one evening and heard a thumping sound and crying from the bathroom. Petitioner checked on D.P. and found that he had fallen in the shower and that his leg was cut by the razor. However, petitioner admitted that the home was not suitable for the children when CPS visited. The mother testified and also denied any physical domestic violence in the home. The mother testified that D.P. overheard conversations about a child in foster care having to eat dog food and about D.P. lying. The mother also asserted that D.P. never told her that he had been choked, nor did she observe markings that would indicate he was choked. According to the mother, D.P. has threatened suicide before and, afterward, he was treated by a neuropsychologist who diagnosed him with ODD and ADHD. During cross-examination, the mother testified that she would believe her children if they told her that they had been abused, but that she did not believe that petitioner choked or cut D.P.

Ultimately, the circuit court found that D.P.'s prior disclosures were corroborated by Z.E. and that the children's forensic interviews were very persuasive. Further, the circuit court found that the testimony of petitioner and the mother was not credible. Accordingly, the circuit court found that the DHHR proved by clear and convincing evidence that the children were abused and neglected. Petitioner then moved for a post-adjudicatory improvement period, which the circuit court denied.

In June of 2018, the circuit court held the final dispositional hearing and petitioner renewed his motion for a post-adjudicatory improvement period but did not testify. The DHHR presented evidence that petitioner continued to deny that he physically abused D.P. and continued to assert the same explanation as to how the child was cut. The DHHR suggested that a psychological evaluation might help petitioner recognize his deficiencies. In response to the DHHR's suggestion, the circuit court reasoned that petitioner's failure to acknowledge his wrongdoing rendered the conditions of abuse and neglect untreatable. Accordingly, the circuit

court denied petitioner's second motion for a post-adjudicatory improvement period and terminated petitioner's custodial rights to D.P. and his parental rights to the remaining children. The circuit court memorialized its decision in its July 17, 2018, order. Petitioner now appeals that order.[2]

The Court has previously established the following standard of review:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011). Upon our review, this Court finds no error in the proceedings below.

On appeal, petitioner first argues that the circuit court erred in denying his motion for a post-adjudicatory improvement period. Petitioner asserts that the circuit court could have granted his motion despite the fact that he failed to acknowledge the abuse that he perpetrated on D.P. We find no merit to petitioner's argument. West Virginia Code § 49-4-610(2) provides that a circuit court may grant a post-adjudicatory improvement period when "[t]he respondent files a written motion requesting the improvement period" and "demonstrates, by clear and convincing evidence, that the respondent is likely to fully participate in the improvement period[.]" The decision to grant or deny an improvement period rests in the sound discretion of the circuit court. *See In re M.M.*, 236 W.Va. 108, 115, 778 S.E.2d 338, 345 (2015) ("West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement period."); Syl. Pt. 6, in part, *In re Katie S.*, 198 W.Va. 79, 479 S.E.2d 589 (1996) ("It is within the court's discretion to grant an improvement period within the applicable statutory requirements[.]"). Further, this Court has held that

[i]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the

---

[2]The mother's parental rights were also terminated during these proceedings. D.P.'s father's parental rights were terminated in a prior proceeding. According to the parties, the permanency plan for the children is adoption in their current relative foster placement.

3

perpetrator of said abuse and neglect, results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense.

*In re Timber M.*, 231 W.Va. 44, 55, 743 S.E.2d 352, 363 (2013) (quoting *In re: Charity H.*, 215 W.Va. 208, 217, 599 S.E.2d 631, 640 (2004)).

The circuit court did not err in denying petitioner's motion for a post-adjudicatory improvement period because petitioner failed to acknowledge that he physically abused D.P. The circuit court's denial of petitioner's motion was consistent with our prior holdings that a parent must acknowledge the existence of the problem before treatment can be effective. Accordingly, we find no error in the circuit court's denial of petitioner's motion for a post-adjudicatory improvement period.

Petitioner also argues that the circuit court erred in finding that his own abuse as a child was a learned behavior and that petitioner would perpetuate that behavior in his parenting. Petitioner believes that he would have been more likely to have been granted an improvement period if the circuit court did not make this finding. However, petitioner ignores that he failed to acknowledge the existence of the problem and, therefore, created the barrier to treatment. Likewise, petitioner argues that the circuit court erred in finding that he "maintained the same position pertaining to abuse" throughout the case. Petitioner asserts that he participated in services and remedied the conditions with his home. However, petitioner presented no evidence that his position with regard to the abuse of D.P. had changed or that he acknowledged the problem. Accordingly, we find that petitioner is entitled to no relief.

Finally, petitioner argues that the circuit court erred in terminating his parental and custodial rights. We disagree. West Virginia Code § 49-4-604(b)(6) provides, in relevant part, that circuit courts are to terminate parental rights upon findings that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the child's welfare. West Virginia Code § 49-4-604(c)(3) provides, in relevant part, that a situation in which there is no reasonable likelihood the conditions of abuse and neglect can be substantially corrected includes one in which the abusing parent "ha[s] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child[.]"

The circuit court correctly found that there was no reasonable likelihood that the conditions of abuse and neglect could be corrected in the near future because petitioner failed to acknowledge the existence of the abuse and rendered the problem untreatable. Petitioner consistently denied the abuse that the circuit court found to have occurred by clear and convincing evidence. Therefore, no form of treatment would be successful in treating the abuse that petitioner could not recognize. Further, it was clearly necessary for the children's welfare to terminate petitioner's parental and custodial rights to avoid further physical abuse.

We have held as follows:

"Termination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, W. Va.Code [§] 49-6-5 [now West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under W. Va.Code [§] 49-6-5(b) [now West Virginia Code § 49-4-604(c)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W.Va. 558, 712 S.E.2d 55 (2011). The circuit court did not err in finding that there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected or in finding that termination was necessary for the welfare of the child. Accordingly, we find no error in the circuit court's termination of petitioner's parental and custodial rights.

For the foregoing reasons, we find no error in the decision of the circuit court, and its July 17, 2018, order is hereby affirmed.

Affirmed.

**ISSUED**:  February 15, 2019

**CONCURRED IN BY**:

Chief Justice Elizabeth D. Walker
Justice Margaret L. Workman
Justice Tim Armstead
Justice Evan H. Jenkins
Justice John A. Hutchison